## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|                                  |   |                          |
|----------------------------------|---|--------------------------|
|                                  | : |                          |
| CHRISTINA E. MELENDEZ,           | : |                          |
|                                  | : |                          |
|                                  | : |                          |
| plaintiff,                       | : |                          |
|                                  | : |                          |
| v.                               | : | CASE NO. 3:19-cv-0732(RAR) |
|                                  | : |                          |
| NANCY A. BERRYHILL,[1]            | : |                          |
| ACTING COMMISSIONER OF           | : |                          |
| SOCIAL SECURITY,                 | : |                          |
|                                  | : |                          |
| defendant.                       | : |                          |

### RULING ON PENDING MOTIONS

Christina E. Melendez ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated April 9, 2019.  Plaintiff timely appealed to this Court.  Currently pending are plaintiff's motion for an order reversing or remanding her case for a new hearing (Dkt. #18-2) and defendant's motion to affirm the decision of the Commissioner.  (Dkt. #20-1.)

---

[1] Andrew Saul is the new Commissioner of Social Security and has been added as a party to this action automatically.

For the reasons that follow, the plaintiff's motion to reverse, or in the alternative, remand is DENIED and the Commissioner's motion to affirm is GRANTED.

**STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be

sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a scintilla or touch of proof here and there in the record."  Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."  42 U.S.C. § 423(d)(1).  In order to determine whether a claimant is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If

In order to be considered disabled, an individual's
impairment must be "of such severity that he is not only unable
to do his previous work but cannot . . . engage in any other
kind of substantial gainful work which exists in the national
economy."  42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in
the national economy means work which exists in significant
numbers either in the region where such individual lives or in
several regions of the country."  Id.[3]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits
under Title II and Title XVI on April 28, 2015.  (R. 499, 503.)[4]
Plaintiff alleged a disability onset date of April 2, 2012.  (R.

---

the claimant has one of these enumerated impairments, the
Commissioner will automatically consider him or her disabled,
without considering vocational factors such as age, education,
and work experience; (4) if the impairment is not "listed" in
the regulations, the Commissioner then asks whether, despite the
claimant's severe impairment, he or she has the residual
functional capacity to perform his or her past work; and (5) if
the claimant is unable to perform his or her past work, the
Commissioner then determines whether there is other work which
the claimant could perform.  The Commissioner bears the burden
of proof on this last step, while the claimant has the burden on
the first four steps.  20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national
economy is made without regard to: 1) "whether such work exists
in the immediate area in which [the claimant] lives;" 2)
"whether a specific job vacancy exists for [the claimant];" or
3) "whether [the claimant] would be hired if he applied for
work."  Id.

[4] The Court cites pages within the administrative record as "R.
___."

499.)  At the time of application, plaintiff alleged that she
suffered from fibromyalgia, obesity, migraines, and depression.
(R. 204.)  The initial application was denied on September 21,
2015, and again upon reconsideration on March 31, 2016.  (R.
264–267, 279–281).  Plaintiff then filed for an administrative
hearing which was held by ALJ John Aletta on July 3, 2018.  (R.
163-196.)  The ALJ issued an unfavorable decision on August 1,
2018.  (R. 138–155.)  Plaintiff filed a request for review with
the Appeals Council and the Decision Review Board denied
plaintiff's request for review on April 9, 2019.  (R. 1–4.)
Plaintiff then filed this action seeking judicial review.  (Dkt.
#18-2.)

## **DISCUSSION**

Plaintiff asserts that the ALJ failed to develop the record
and improperly examined plaintiff's symptoms of pain and
fibromyalgia; and the ALJ's step five findings are unsupported
by substantial evidence.  (Pl. Br. 1, 11, 14.)  Based on the
following, the Court finds that the ALJ did not fail to develop
the record, the ALJ properly examined plaintiff's pain and
fibromyalgia, and that the ALJ's step five findings are
supported by substantial evidence.  The Court therefore affirms
the ALJ's decision.

## I.   The ALJ Did Not Fail to Develop the Record

Plaintiff asserts that ALJ failed to develop the record by not requesting medical source statements from plaintiff's treating physicians, Doctors Choudhari, Memet, Sheth, Molla, and Rho.  (Pl. Br. 1-2.)  The Court disagrees.

An ALJ has an affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'"  Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d Cir. 1982)); see also Swiantek v. Commissioner, 588 F. App'x 82, 83-84 (2d Cir. 2015).  "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant."  Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v. Chater, 94 F.3d 34, 37-38 (2d Cir. 1996)).

A court must remand "where 'the medical records obtained by the ALJ do not shed any light on the [claimant's RFC], and [where] the consulting doctors did not personally evaluate' the claimant."  Martinez v. Berryhill, No. 3:17-cv-843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019) (quoting Guillen v. Berryhill, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order)).  "The record is insufficient when '[t]he medical records discuss [the claimant's] illnesses and suggest treatment

for them, but offer no insight into how [the] impairments affect
or do not affect [the claimant's] ability to work, or [his]
ability to undertake the activities of daily life.'" Martinez,
2019 WL 1199393, at *11 (alterations in original) (quoting
Guillen, 697 F. App'x at 109).

The ALJ is not required to acquire an opinion from the
plaintiff's treating source where the ALJ's opinion is
consistent with a consultative examiner and "the ALJ also [has]
all of the treatment notes from" the plaintiff's treating
physician. Pellam v. Astrue, 508 Fed. Appx. 87, 89–90 (2d Cir.
2013).

Plaintiff asserts that her medical records from the
relevant period were insufficient for the ALJ to rely on in
formulating plaintiff's RFC. (Pl. Br. 5-6.) As a result,
plaintiff asserts there was an obvious gap in the record
requiring the ALJ to request medical source statements from
plaintiff's treating physicians. (Pl. Br. 6.)

In Martinez, the court determined that the record was
sufficient for the ALJ to make as determination as to the
plaintiff's RFC despite the lack of opinions from plaintiff's
treating physicians. Martinez, 2019 WL 1199393, at *11–12. The
ALJ relied on consultative reports and the record to support his
conclusions. Id. While no treating physicians opined on
plaintiff's limitations, the court determined that the notations

from plaintiff's multiple physicians indicating that plaintiff's improvements and the effect of the pain on plaintiff's range of motion in the "extensive and voluminous medical record" were sufficient.  Id. at *12

As in Martinez, the ALJ Aletta relied on consultative reports and an extensive and voluminous medical record filled with notations by plaintiff's treating physicians detailing plaintiff's physical abilities.  Despite plaintiff's continual reports of pain, plaintiff's treating physicians routinely documented that plaintiff did not appear in distress and had a normal strength, gait, range of motion, and normal neurological exams even while in pain.  (R. 940, 943, 947, 954, 958, 959, 961, 965, 967, 968, 984, 986, 989, 1063, 1142, 1190, 1213, 1218, 1302, 1321, 1355, 1389.)  Plaintiff's physicians also noted improvement in plaintiff's pain.  (R. 704, 722, 776, 782, 938, 945, 949, 961, 963, 986, 1063, 1145, 1146, 1150, 1156, 1160, 1390.)

The record also reflects on plaintiff's ability to work and participate in activities of daily living.  Plaintiff reported to Dr. Rho that while she experienced pain in her lower extremities, she stands all day while working as a cashier.[5]  (R.

---

[5] Plaintiff's medical records indicate that she told her physicians that she was working at times during the relevant period.  (R. 699.)  However, the Court does not opine the effect of these statements on the ALJ's determination that plaintiff

699.)  Plaintiff's physicians routinely recommended more
physical exercise and plaintiff made strides in becoming more
active, which included joining Girl Scouts and walking more.
(R. 943, 945, 962, 1146.)  Plaintiff also indicated that she
cares for her father.  (R. 178.)

While plaintiff's physicians occasionally noted a decreased
range of motion, plaintiff repeatedly reported that she was not
in pain and her doctors determined her fibromyalgia was in
remission.  (R. 726, 728, 1142, 1144, 1160.)  While plaintiff
reported symptoms of pain after her fibromyalgia was noted as
being in remission, plaintiff's physician noted that this
occurred after plaintiff discontinued her medication for seven
months despite the fact that it had been highly effective.  (R.
1386-91.)

The ALJ assigned partial weight to the opinions of
consultative physicians, Doctors Brown and Ellis.  (R. 151.)
Dr. Brown opined that plaintiff's assertions about the
intensity, persistence, and functionally limiting effects of her
symptoms were not substantiated by the medical evidence and were
only partially credible.  (R. 212.)  Dr. Brown also opined that
plaintiff could occasionally lift twenty pounds, frequently lift

---

had not engaged in substantially gainful activity past her onset
date.  That issue is not before the Court.  Rather, the Court
merely examines whether the statements tend to support the ALJ's
RFC determination.

9

ten pounds, stand or walk for a total of six hours in an eight-hour workday, and had an unlimited ability to push and pull. (R. 212-213.)  Dr. Brown further opined that plaintiff could frequently climb ramps, stoop, kneel, and crouch; occasionally climb ladders and crawl; and had an unlimited ability to balance.  (R. 213.)

Dr. Ellis opined similar limitations except that he determined that plaintiff could only occasionally climb ramps, stoop, kneel, crouch, and crawl; never climb ladders; and could frequently balance.  (R. 242.)  The ALJ's RFC determination is consistent with the opinions of both Doctors Brown and Ellis and notably, is more restrictive than the Dr. Brown's opinion.  (R. 147.)  The ALJ's RFC determination is also consistent with the medical evidence which demonstrates her abilities to undertake work and activities of daily living.

The Court rejects plaintiff argument that her obesity and fibromyalgia form a complex intersection of symptoms the effects of which the ALJ could not possibly understand without a formal opinion from plaintiff's treating physician.  (Pl. Br. 6-7.)  As noted above, plaintiff's treating physicians routinely noted plaintiff's physical capabilities in conjunction with plaintiff's obesity and pain.

The Court also rejects plaintiff's assertion that the ALJ improperly rejected plaintiff's testimony describing far less

physical capabilities.  (Pl. Br. 7.)  As noted above, the ALJ found plaintiff's statements to be inconsistent with the record and both Doctors Brown and Ellis opined that plaintiff's statements were not entirely credible.  (R. 148, 212, 241.) Regardless, the issue of whether the ALJ failed to develop the record is not dependent on plaintiff's testimony.  Rather, the Court is to examine the medical evidence and determine if there was a gap in the record.  See Tankisi v. Comm'r of Soc. Sec., 521 Fed. Appx. 29, 34 (2d Cir. 2013).

The medical records were sufficient for the ALJ to determine plaintiff's RFC.  Thus, there was no obvious gap in the record and the ALJ was not obligated to request an opinion from plaintiff's treating sources.  Therefore, the ALJ did not fail to develop the record.

## II.  The ALJ Properly Evaluated Plaintiff's Claims of Pain and Fibromyalgia

Plaintiff asserts that the ALJ improperly evaluated her symptoms of pain and her fibromyalgia.  Plaintiff argues that the ALJ applied an incorrect standard of review when examining plaintiff's symptoms and therefore the Court must reverse.  The Court disagrees.

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.  At the first step, the ALJ must decide whether the claimant suffers

from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Genier, 606 F.3d at 49 (alterations in original) (quoting 20 C.F.R. § 404.1529(b)).

"In determining whether [an individual is] disabled, [the ALJ will] consider all [of an individual's] symptoms, including pain, and the extent to which [his or her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(c).  While statements of pain are insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence.  Id. at § 404.1529(c)(2).

Plaintiff argues that the ALJ improperly evaluated her claims of pain by not accepting them as completely true as to the extent plaintiff alleges. (Pl. Br. 12.)  Plaintiff asserts that there is no medical evidence that refutes her pain and therefore her testimony should have been accepted as credible.

(Pl. Br. 13.)  Plaintiff is incorrect.  As noted above, the ALJ
is required to follow a two-step process and the ALJ "is not
required to accept the [plaintiff's] subjective complaints
without question; he may exercise discretion in weighing the
credibility of the [plaintiff's] testimony in light of the other
evidence in the record."  Genier v. Astrue, 606 F.3d 46, 49 (2d
Cir. 2010) (citing Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.
1979)).

     At step one, the ALJ determined that plaintiff suffered
from a number of severe impairments that could reasonably be
expected to produce the symptoms alleged: fibromyalgia,
polyarthropathy, seronegative inflammatory osteoarthritis,
obesity, and depressive disorder.  (R. 143, 148.)  At step two,
however, the ALJ determined that plaintiff's statements
regarding the intensity, persistence, and limiting effect of
these symptoms were not entirely consistent with the medical
evidence.  (R. 148.)

     The ALJ examined plaintiff's statements and the extent to
which they were consistent with the objective medical evidence
and other evidence.  As the ALJ noted, plaintiff asserted that
she is unable to work due to problems with sitting, standing,
and holding items.  (R. 148, 173.)  Plaintiff testified that she
is unable to hold a basket, a five-pound bag of potatoes, or a
gallon of milk.  (R. 177.)  Plaintiff further testified that she

has difficulty walking long distances and must sit after fifteen to twenty minutes of walking. (R. 177–178.) Plaintiff later asserted that she needs to sit after just five minutes of standing or walking. (R. 179.)

Despite plaintiff's testimony that she cannot stand or walk for longer than five minutes, plaintiff reported to Dr. Rho that while she experienced pain in her lower extremities, she stands all day while working as a cashier. (R. 699.) Further, plaintiff's physicians routinely recommended more physical exercise and plaintiff made strides in becoming more active, which included joining Girl Scouts and walking more. (R. 943, 945, 962, 1146.)

Despite plaintiff's continual reports of pain, plaintiff's treating physicians routinely documented that plaintiff did not appear in distress and had a normal strength, gait, range of motion, and normal neurological exams even while in pain. (R. 940, 943, 947, 954, 958, 959, 961, 965, 967, 968, 984, 986, 989, 1063, 1142, 1190, 1213, 1218, 1302, 1321, 1355, 1389.) Plaintiff's physicians also noted the improvement in plaintiff's pain. (R. 704, 722, 776, 782, 938, 945, 949, 961, 963, 986, 1063, 1145, 1146, 1150, 1156, 1160, 1390.) Finally, plaintiff cared for her father by preparing his food for him. (R. 178–79.)

Substantial evidence supports the ALJ's determination that the plaintiff's statements concerning the intensity, persistence, and limiting effect of her symptoms are not entirely consistent with the record.  As the ALJ properly followed the two-step procedure for evaluating plaintiff's pain and substantial evidence supports his analysis, the ALJ did not improperly evaluate plaintiff's pain.

Plaintiff further argues that there is a heightened standard when examining plaintiff's fibromyalgia which requires an examination of all her symptoms in combination.  (Pl. Br. 13.)  Plaintiff asserts that Social Security Ruling ("SSR") 12-2p creates this heightened standard.  SSR 12-2p, 2012 SSR LEXIS 1.  Plaintiff's assertion is incorrect.

SSR 12-2p uses almost the identical standard as indicated above.  SSR 12-2p provides, "[h]ow do we evaluate a person's statements about his or her symptoms and functional limitations? We follow the two-step process set forth in our regulations and in SSR 96-7p."  Id. at *14.  "First step of the symptom evaluation process.  There must be medical signs and findings that show the person has [a medically determinable impairment] which could reasonably be expected to produce the pain or other symptoms alleged."  Id. at *14.  At step two, the ALJ will

> then evaluate the intensity and persistence of the person's
> pain or any other symptoms and determine the extent to
> which the symptoms limit the person's capacity for work. If

objective medical evidence does not substantiate the
person's statements about the intensity, persistence, and
functionally limiting effects of symptoms, [the ALJ will]
consider all of the evidence in the case record, including
the person's daily activities, medications or other
treatments the person uses, or has used, to alleviate
symptoms; the nature and frequency of the person's attempts
to obtain medical treatment for symptoms; and statements by
other people about the person's symptoms. . . . [W]e will
make a finding about the credibility of the person's
statements regarding the effects of his or her symptoms on
functioning.

Id. at *14–15.

Clearly, no greater standard of review was created for
plaintiff's fibromyalgia.  Rather, the same standard applies to
plaintiff's pain regardless of whether it is brought on by
fibromyalgia or some other impairment.  Therefore, the ALJ's
examination of plaintiff's pain and fibromyalgia was sufficient.

Having found no error in the ALJ's examination of
plaintiff's pain and fibromyalgia, the Court affirms the ALJ's
analysis.

### III. The ALJ's Step Five Findings Are Supported by Substantial Evidence

Plaintiff argues that the ALJ's findings at step five are
unsupported by substantial evidence.  (Pl. Br. 15.)  Plaintiff
asserts that the ALJ improperly relied on the testimony of
vocational expert Richard Hall as Mr. Hall did not cite any
sources supporting his testimony and cited to jobs that are now
obsolete.  (Pl. Br. 14.)  Plaintiff further argues that

substantial evidence does not support the ALJ's hypothetical to Mr. Hall.  The Court disagrees.

> *a. The ALJ's hypothetical was supported by substantial evidence.*

Plaintiff argues that the ALJ's step five determinations are not supported by substantial evidence because the hypothetical given to Mr. Hall was not supported by substantial evidence.  Specifically, plaintiff argues that the ALJ improperly determined that she could climb stairs, ladders, stoop, kneel, crouch, and crawl because plaintiff is morbidly obese.  (Pl. Br. 21.)

Absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

"[W]hether there is substantial evidence supporting the [plaintiff's] view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet v. Colvin, 523 Fed. Appx. 58, 59 (2d Cir. 2013)(summary order).  Analogously, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

When an individual's impairment does not meet or equal a listed impairment, the ALJ will "make a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record."  20 C.F.R. § 404.1520(e).  An individual's residual functional capacity ("RFC") is the most an individual can still do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  Plaintiff has the burden of establishing a diminished RFC.  See Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004).

> *1. The ALJ's hypothetical to Mr. Hall regarding plaintiff's ability to climb stairs, ladders, stoop, kneel, crouch, and crawl is supported by substantial evidence.*

Plaintiff does not present any evidence demonstrating that she was unable to climb stairs, ladders, stoop, kneel, crouch, and crawl due to her obesity.  Rather, she states that obesity should be evidence *per se* of an inability to engage in physical

activities.  (Pl. Br. 21.)  The Court rejects this assertion.
"A lack of supporting evidence on a matter for which the
plaintiff bears the burden of proof, particularly when coupled
with other inconsistent record evidence, can constitute
substantial evidence supporting a denial of benefits."  Eusepi
v. Colvin, 595 Fed. Appx. 7, 8 (2d Cir. 2014) (citing Talavera
v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012)).

     The ALJ examined plaintiff's obesity and determined that
there was no evidence demonstrating that her obesity limited her
physical abilities any more than as provided in her RFC.  (R.
145.)  Further, the record fails to establish any finding to the
contrary.  Plaintiff's treating physicians routinely noted that
despite plaintiff's obesity, she did not appear in distress and
had a normal strength, gait, range of motion, and normal
neurological exams even while in pain.  (R. 940, 943, 947, 954,
958, 965, 984, 986, 989, 1142, 1213.)

     Dr. Brown opined that plaintiff could frequently climb
ramps, stoop, kneel, and crouch; occasionally climb ladders and
crawl, and had an unlimited ability to balance.  (R. 213.)  Dr.
Ellis opined that plaintiff could only occasionally climb ramps,
stoop, kneel, crouch, and crawl; never climb ladders; and could
frequently balance.  (R. 242.)

     Plaintiff merely disagrees with the ALJ's conclusion but
does not state that this evidence fails to rise to the level of

substantial evidence.  "'Under the substantial evidence standard
of review, it is not enough for Plaintiff to merely disagree
with the ALJ's weighing of the evidence . . . Plaintiff must
show that no reasonable factfinder could have reached the ALJ's
conclusions based on the evidence in record.'"  Lillis v.
Colvin, No. 3:16-cv-269(WIG), 2017 WL 784949, at *5 (D. Conn.
Mar. 1, 2017) (quoting Hanson v. Comm'r of Soc. Sec., No. 315-
CV-0150GTS(WBC), 2016 WL 3960486, at *12 (N.D.N.Y. June 29,
2016), report and recommendation adopted sub nom. Hanson v.
Colvin, No. 315-CV-150GTS(WBC), 2016 WL 3951150 (N.D.N.Y. July
20, 2016)).

Plaintiff has failed to show that, based on the evidence in
record, no reasonable factfinder could have reached the ALJ's
conclusions as to plaintiff's ability to climb stairs, ladders,
stoop, kneel, crouch, and crawl.  As such, the ALJ's RFC
determination related to plaintiff's ability to climb stairs,
ladders, stoop, kneel, crouch, and crawl is supported by
substantial evidence.

*2. The ALJ's hypothetical concerning plaintiff's mental
limitations is supported by substantial evidence.*

Plaintiff raises a similar argument regarding her mental
abilities.  Plaintiff asserts that the ALJ should have found
greater mental limitations because the ALJ determined plaintiff
had moderate limitations in concentration, persistence or pace

when assessing whether plaintiff's depression met listing 12.04.
(Pl. Br. 22.)

"It is well established that a step three determination is
not an RFC assessment, but instead is used to rate the severity
of mental impairment." Race v. Comm'r of Soc. Sec., No. 1:14-
CV-1357 (GTS/WBC), 2016 WL 3511779, at *3 (N.D.N.Y. May 24,
2016)(citing SSR 96-8p 1996 WL 374182 (July 2, 1996); McIntyre
v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014); Skiba v. Covlin,
No. 3:13-CV-1361, 2015 WL 1780633, at *6 (N.D.N.Y. April 20,
2015); Huestis v. Comm'r of Soc. Sec., No. 2:13-CV-201, 2014 WL
4209927, at *2 (D. Vt. Aug. 25, 2014)).  "Therefore, a
determination made at step three need not carry over verbatim to
the ultimate RFC determination because the two determinations
require their own distinct analysis and conclusion." Race, 2016
WL 3511779, at *3.

The ALJ's analysis of the paragraph B criteria employs a
"special technique" "used to rate the severity of mental
impairments at steps 2 and 3 of the sequential evaluation
process." Id. at *4.  Where the ALJ states that this analysis
is not apart of the RFC analysis, and the RFC analysis is
supported by substantial evidence, "the ALJ [does] not commit
legal error in formulating an RFC that did not contain exact
verbiage of limitations found at steps two and three because
'paragraph B' findings are not RFC findings." Id.

The ALJ specifically noted that the 12.04 "paragraph B" factors were not assessments of plaintiff's mental RFC determinations.  (R. 146.)  As the ALJ explained, the analysis of plaintiff's mental RFC was much broader than the criteria in the paragraph B factors.  (R. 146.)  Plaintiff does not argue that the ALJ's mental RFC determination is not supported by substantial evidence.  Rather, plaintiff merely argues that paragraph B limitations must be included in the RFC determination.  (Pl. Br. 22.)  Plaintiff's argument is incorrect.  See Race, 2016 WL 3511779, at *4.

The ALJ's reliance on the vocational expert's testimony was proper as the ALJ's RFC is supported by substantial evidence. Dumas v. Schweiker, 712 F.2d 1545, 1554, n.4 (2d Cir. 1983) (the ALJ's step five determination is appropriate where the vocational expert's testimony is based on an RFC determination supported by substantial evidence).

*b. The ALJ did not err by relying on the testimony of Mr. Hall.*

At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the plaintiff can perform.  See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert."  McIntyre v. Colvin, 758 F.3d

146, 151 (2d Cir. 2014).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion,' . . . and accurately reflect the limitations and capabilities of the [plaintiff] involved."  Id. (internal citations omitted) (alterations in original) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)) (citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)).

A vocational expert's failure to provide the scientific data supporting his or her conclusion as to the number of jobs available in the national economy may still be supported by substantial evidence.  Biestek v. Berryhill, 139 S. Ct. 1148, 1157 (2019).  "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case.  It takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record."  Id.  While the refusal to present scientific data may or may not affect the credibility of the expert's testimony, the analysis "defers to the presiding ALJ, who has seen the hearing up close."  Id.

The vocational expert's credentials, history of testimony, her ability to answer the ALJ and attorney's questions, and the alleged basis for her testimony are all relevant in providing substantial evidence for her opinion.  See id. at 1155.

The Second Circuit has held that "a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally." McIntyre, 758 F.3d at 152. "[T]he ALJ [may] reasonably credit[] [a vocational expert's] testimony, which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record." Id.

In Crespo, the vocational expert identified available jobs based on a hypothetical person's limitations and the number of such available jobs in the national economy. Crespo v. Comm'r of Soc. Sec., No. 3:18-CV-00435 (JAM), 2019 WL 4686763, at *8 (D. Conn. Sept. 25, 2019). The ALJ relied on the vocational expert's testimony despite the expert's failure to identify the source of the number of jobs. Id. The plaintiff's counsel examined the vocational expert and did not challenge the qualifications of the expert or ask about the number of jobs available. Id. The court determined that "the vocational expert's failure to identify the sources of her job-numbers data does not dispel the existence of substantial evidence for the ALJ's conclusion that Crespo could perform a substantial number of jobs that existed in the national economy." Id. at *9.

The facts presented here are almost identical to those of Crespo. The ALJ relied on Mr. Hall's testimony despite his

24

failure to provide a source for his testimony.  (R. 35-36.)
However, the ALJ confirmed with Mr. Hall that his testimony was
consistent with the Dictionary of Occupational Titles ("DOT").
(R. 109, 191, 192-93.)  Plaintiff's counsel did not object to
Mr. Hall's qualifications or to the number of jobs during the
hearing.  See (R. 186, 194.)  As in Crespo, Mr. Hall's failure
to provide a source for the number of jobs in the economy does
not "dispel the existence of substantial evidence."  Crespo,
2019 WL 4686763, at *9.

Finally, plaintiff argues that the ALJ erred in accepting
Mr. Hall's testimony because the job "Order Caller" is obsolete
due to computers.  (Pl. Br. 19.)  Plaintiff argues that the ALJ
improperly relied on Mr. Hall's testimony because a reasonable
mind would know that 120,000 order caller jobs do not exist in
the national economy.  (Pl. Br. 19.)

Plaintiff fails to provide any evidence that a significant
number of the telephone order caller job is not available in the
national economy.  Plaintiff merely speculates that this job now
no longer exists due to the use of computers.  Contrary to
plaintiff's assertion, the ALJ is specifically directed to take
administrative notice of the reliable job information from the
DOT.  20 C.F.R. § 416.966(d).  Further, as already stated, Mr.
Hall's testimony as to the number of jobs in the national
economy, in addition to his credentials and experience, provided

substantial evidence to support the ALJ's finding that a significant number of telephone quotation clerk jobs exist in the national economy.  Therefore, the Court rejects plaintiff's argument.

The ALJ properly relied on the testimony of the vocational expert.  Therefore, plaintiff is incorrect that his step five determination is not supported by substantial evidence *per se*. Plaintiff has failed to demonstrate that the ALJ's RFC determination is not supported by substantial evidence and thus that Mr. Hall's testimony was in error.  As such, the ALJ's step five findings are supported by substantial evidence.

<u>CONCLUSION</u>

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #18-2) is DENIED and the Commissioner's motion to affirm that decision (Dkt. #20-1) is GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. <u>See</u> <u>28 U.S.C. § 636(c)(3).</u>

SO ORDERED this 10th day of July 2020, at Hartford, Connecticut.

_____/s/__ ____ _____

Robert A. Richardson
United States Magistrate Judge